UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANET GASWINT,

Plaintiff,

v.

PRIMERICA LIFE INSURANCE COMPANY,

Defendants.

Case No. 2:22-cv-247-TLF

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE

This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claim (Dkt. 31). The Court has considered the briefs, the oral argument before the Court, and the remaining record. There are no genuine disputes of material fact, and therefore, Defendant's motion for summary judgment is GRANTED. Plaintiff's complaint is dismissed with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1984, John Gaswint – Plaintiff's now-deceased husband -- obtained a life insurance policy (the "Policy") with Primerica. Dkt. 31, Declaration of Emily Harris, Exhibit D at 12:1-7. In 1987, Mr. Gaswint moved to a new address located in Stanwood, Washington, and provided Primerica with his change of address for his Policy. *See id.* at Exhibit B.

In 1995, Mr. Gaswint requested an amendment to his Policy; the Policy, as amended, insured Mr. Gaswint's life in the total amount of $180,000, with a base

coverage of $5,000 and Modified Premium Benefits Rider ("the "Rider") providing $175,000 in coverage. *See id.* at Exhibit A. The base coverage of $5,000 was scheduled to expire in 2040 or when Mr. Gaswint turned 90 years old, whichever occurred first. *Id.*

The Rider provided $175,000 in coverage for twenty years. *Id.*

The "Term Period" of the Rider began on March 4, 1995 and ended on March 4, 2015 -- or when Mr. Gaswint turned 70 years old -- whichever was earlier. *Id.* Further, pursuant to the terms of the Rider, it was set to "terminate and no longer be in force: (1) if any premium remains unpaid after the end of the Grace Period, (2) if the Policy terminates or is continued under a nonforfeiture provision, if any; (3) on and after the Rider Expiry Date or age 70, whichever is earlier, or (4) on and after the date as of which you cancel it." *Id.* at 18. The Rider Expiry Date was March 25, 2015. *Id.* at 19.

In 2003, the Gaswints moved from their Stanwood home and lived at multiple addresses between 2003 and 2007. *Id.* at Exhibit D, 8:24-9:23. In 2007, the Gaswints moved to Arlington, Washington. *Id.* at 10:12-14. Mrs. Gaswint testified that in 1999, they started using a P.O. Box and changed to another P.O. Box in 2007, which they kept until 2017. *Id.* at 11:6-17.

Primerica had the Stanwood address on file for the Gaswints. *See id.* at Exhibit H. On January 14, 2015, Primerica sent two letters to Mr. Gaswint at the Stanwood address informing him that the Rider would be expiring on March 25, 2015. *See id.* at Exhibit M. A notice of the same was also sent to the agent of record for Mr. Gaswint's policy. *See id.* at Exhibit J, 13:1-13. Primerica did not receive these letters back from the United States Postal Service as unable to deliver. Ms. Gaswint informed Primerica, and

testified to the same, that her Stanwood home was sold to a neighbor and they may have discarded the mail. *See id.* at Exhibit H; *see also* Exhibit D, at 51:6-15.

The Rider expired on March 25, 2015. Mr. Gaswint passed away on January 9, 2020, at the age of 69. *See* Dkt. 30 at 7; Dkt. 32 at 1. Because only the $5,000 in base coverage on Mr. Gaswint's life insurance policy remained in effect, Mrs. Gaswint, as his beneficiary, received that sum on January 25, 2020. *See* Dkt. 31, Declaration of Emily Harris, at Exhibit N. That sum was sent to the Arlington address which Mrs. Gaswint provided to Primerica after Mr. Gaswint's death. *Id. See also* Exhibit D at 51:16-25.

On January 12, 2022, Mrs. Gaswint filed the instant lawsuit against Primerica asserting a claim of negligence. Dkt. 1. Specifically, she alleges that Primerica failed to exercise reasonable care in 2015 when it sent notice of the expiring Rider to the Gaswints' former Stanwood address. *Id.* Mrs. Gaswint alleges that neither she nor Mr. Gaswint received the letters because they were residing in Arlington, Washington in 2015. *Id.*

Primerica now moves for summary judgment against Mrs. Gaswint. Dkt. 30.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, supra). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**B. Mrs. Gaswint's Negligence Claim**

Plaintiff has brought one claim – negligence. In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.,* 129 Wash.2d 43, 48, 914 P.2d 728 (1996) (citing *Tincani v. Inland Empire Zoological Soc'y,* 124 Wash.2d 121, 127–28 (1994)). If any of these elements cannot be met as a matter of law, summary judgment for the defendant is proper.

Plaintiff relies on Washington's "community property" principle, the voluntary rescue doctrine, and the federal Bank Secrecy Act to show that Primerica owed her a duty[1].

First, Mrs. Gaswint claims that as an "owner" of the Policy, Primerica owed her a duty of care even prior to Mr. Gaswint's death. Mrs. Gaswint relies on the principle of "community property" under Washington law to argue that she was also an "owner" of the Policy since community funds, i.e., funds owned by Mr. and Mrs. Gaswint as a marital community, were used to pay for the Policy premiums.

Primerica does not argue that community funds were not used to pay for the Policy premiums. When insurance premiums are paid for with community funds, the *proceeds* are community property. *Porter v. Porter*, 107 Wash.2d 43, 49 (1986). Ownership of the proceeds will be separate property or community property in proportion to the percentage of total premiums which have been paid with separate or community funds. *See id.*

---

[1] Both parties agree that RCW 48.18.290, which specifically addresses "Cancellation by Insurer," does not apply in the instant case. *See* Dkt. 32 at 9.

Thus, Mrs. Gaswint was not an owner[2] of the Policy while Mr. Gaswint was alive.

Mr. Gaswint, as the owner of the Policy, should have informed Primerica of his change of address, as well as been aware of the expiration term of the Rider. Insureds have an affirmative duty under Washington law to read their policies and be on notice of the terms and conditions of the policies. *Dombrosky v. Farmers Ins. Co. of Washington*, 54 Wash. App. 245, 257(1996). The Rider specifically states that it would terminate on or after the Rider Expiry Date, i.e., March 25, 2015, or age 70, whichever is earlier. There was no option to renew the Rider after March 25, 2015.

Mrs. Gaswint next relies on Voluntary Rescue Doctrine to argue that Primerica owed her a duty. Mrs. Gaswint seems to argue that when Primerica sent Mr. Gaswint a notice that the Child Rider to the Policy was going to expire on July 5, 2013, Primerica was on notice that the Gaswints no longer lived at their Stanwood address because the letter was returned to Primerica as undeliverable. Subsequently, in 2015, Primerica nonetheless sent two notices to the Gaswints at their Stanwood address informing them that the Rider at issue here is going to expire. Therefore, plaintiff asserts, Primerica took steps to assist the Gaswints, i.e., sending notices of the upcoming expiration date of the Rider, but did so negligently in violation of the Voluntary Rescue Doctrine. It further appears from Mrs. Gaswint's response to Primerica's summary judgment motion that because the notices were sent to the wrong address, the Gaswints were not aware that

[2] The Policy defines "You or Your" as the "Owner of the policy" and "the Insured." *See* Dkt. 31, Exhibit A at 6. The Policy makes a distinction when referring to anyone else other than the named Insured. For example, in the Terminal Illness Accelerated Benefits Endorsement, the Policy defines "You" or "Your" as the "Insured *and/or* the Insured Spouse and/or the Other Insured Person." *See id.* at 11. The "Owner" still referred to the Owner of the Policy. *Id.* In the Rider relevant here, "Insured" is defined as the "person named in the Policy and Rider schedules whose life is insured under the Policy and this Rider." *See id.* at 17.

they could convert the "Spousal Rider" to a new plan that would extend the life insurance coverage with the same benefits to the age of 100 and would not require evidence of insurability. *See* Dkt. 32 at 5.

Washington courts recognize a general duty to use reasonable care once an actor has undertaken to render aid or to warn a person in danger. Ordinarily, liability for a negligent rescue will be based upon allegations that the defendant made the plaintiff's situation worse by: "(1) increasing the danger; (2) misleading the plaintiff into believing the danger had been removed; or (3) depriving the plaintiff of the possibility of help from other sources." *See Ganno v. Lanoga Corp.*, 119 Wash.App. 310, 316 (2003), *as amended on denial of reconsideration* (Mar. 16, 2004). Mrs. Gaswint has not shown how Primerica made her "situation worse" by sending notices of the Rider's expiration[3]. As explained above, the Rider Expiry Date was clearly indicated on the Rider, and Mr. Gaswint, as the owner of the Policy, was obligated to know its terms.

Although both parties agree that RCW 48.18.290 ("Cancellation by an Insurer") is not at issue here, the mailing requirements in the statute are still worth noting. Under RCW 48.18.290, notice of cancellation must be mailed to the "last known address of the insured in the records of the insurer." The notice requirement is satisfied by the insurer's proof that it deposited the notice in the mail and the Post Office did not return it as undeliverable. The insurer is not required to show that the insured actually received the notice. *Isaacson v. DeMartin Agency, Inc.,* 77 Wash. App. 875, 893 (Div. 3 1995) (trial

---

[3] Primerica states that the voluntary rescue doctrine is inapplicable because there was no physical harm. A result of physical harm from an individual's failure to exercise care is a requirement under Restatement (Second) of Torts § 324A, which is different from the voluntary rescue doctrine. *Meneely v. S.R. Smith, Inc.*, 101 Wash. App. 845 (Div. 3 2000).

court properly found for insurer where insurer mailed notice to insure within time limit for canceling policy). Here, Primerica states that it has no record of receiving the 2015 letters back from the Post Office as undeliverable. Mrs. Gaswint testified that the neighbor who purchased her Stanwood home may have disposed of the letters.

Further, the “Spousal Rider” is not at issue in this case. The operative Rider, the Modified Premium Term Insurance Additional Benefits Rider on Insured, expired on March 25, 2015. It could only be “converted” to something else “upon conversion of the base plan.” This conversion provision did not allow for the *renewal* of the Rider, however.

Finally, Mrs. Gaswint argues, for the first time in her response to Primerica’s summary judgment motion, that the Bank Secrecy Act established the standard of care Primerica should have followed. Based on the fact that this theory of liability was raised for the first time only now, the Court can refuse to consider it. *See Ortiz v. Lopez,* 688 F.Supp.2d 1072, 1082 (E.D.Cal.2010) (“[A] plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed.”).

Nonetheless, even if the Court did consider this new theory, Mrs. Gaswint’s claim of negligence under either the Bank Secrecy Act or the United States Patriot Act would fail. Mrs. Gaswint argues that Primerica had a duty under the Bank Secrecy Act to “know your customer” and verify the Gaswints’ address whenever they called Primerica. Courts are unanimous, however, that there is no private right of action under the Bank Secrecy Act or the Patriot Act. *See, e.g., Sterling Sav. Bank v. Poulsen*, 2013 WL 3945989, at *19 (N.D. Cal. July 29, 2013) (BSA and Patriot Act do not provide a private

right of action); *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006) ("James' claim under the Bank Secrecy Act, 31 U.S.C. § 5318, does not authorize a private cause of action against a financial institution or its employees.") (citing *Lawrence Twp. Bd. Of Educ. V. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (explaining that a private citizen may only enforce a federal law if Congress has created a private right of action)); *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) ("[T]he Bank Secrecy Act does not create a private right of action."). Since there is no private right of action, there can be no duty of care arising out of the Bank Secrecy Act's "know your customer" provision.

## CONCLUSION

Thus, based on the foregoing discussion, Mrs. Gaswint has been unable to show that Primerica owed her a duty as a matter of law. Primerica's summary judgment motion should be granted; Mrs. Gaswint's complaint is dismissed with prejudice.

Dated this 17th day of July, 2023.

Theresa L. Fricke
United States Magistrate Judge